**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 07-0411-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Uawndre Larue Fields (1)<br>Depaul Brooks (2), | |
| Defendants. | |

Defendants Uawndre Fields and Depaul Brooks are charged with child sex trafficking and interstate transportation of a minor for prostitution. Defendants have filed motions to suppress evidence resulting from their initial arrest and the accompanying search of their rental vehicle. Dkt. ##88-89. The Government has filed responses to Defendants' motions. Dkt. ##100-101. The Court held an evidentiary hearing on January 25, 2008. For the reasons set forth below, the Court will deny Defendants' motions.

**I.    Facts.**

The Government presented testimony from City of Phoenix Police Officers Ben Kartchner, Greg Scheffer, Nicholas Nolan, and James Gallagher. Defendants Fields and Brooks also testified. On the basis of evidence presented at the hearing, including the Court's credibility determinations, the Court finds the following relevant facts.

During the early morning hours of April 29, 2006, Officer Kartchner received a radio call regarding a possible trespassing at a convenience store located on the southwest corner of 51st Avenue and McDowell Road in Phoenix, Arizona. This is an area known for

prostitution activity. Upon arriving at the store, Office Kartchner was directed by a security guard to three females in the parking lot. The females were scantily clad and appeared to be engaging in prostitution solicitation.

When Officer Kartchner contacted the three females, it appeared to him that one of them was a juvenile. Although this female initially provided a false name and said she was over 18 years of age, she subsequently confirmed that she was 15 years old. Officer Kartchner took her into custody for violation of the City of Phoenix curfew and transported her to the Maryvale Precinct of the Phoenix Police Department.

Upon arriving at the precinct, the female juvenile provided her true name, which in this order will be abbreviated as R.O. Officer Kartchner conducted a computer search and found a "missing juvenile" warrant for R.O. Because it appeared that R.O. had been engaged in prostitution, Officer Kartchner asked Officer Scheffer, who was responsible for prostitution investigations, to talk with R.O. After Officer Scheffer had done so, Officer Kartchner transported R.O. to the residence of her parents in Apache Junction, Arizona.

During her interview with Officer Scheffer, R.O. confirmed that she had been engaged in prostitution. She stated that she recently had run away from a rehabilitation center with another juvenile female. The two juveniles had met several adults who had talked them into engaging in prostitution. These individuals included two black males named Dre and Lee. R.O. stated that Dre and Lee had taken her to California to engage in prostitution and had recently returned with her to Phoenix.

R.O. described Dre as 5'8" to 5'10", 190 to 200 pounds, 18 to 25 years old, with a "tight fade" haircut. She described Lee as 6'0" to 6'3", 200 to 220 pounds, 18 to 25 years old, with a "tight fade" haircut. R.O. reported that there were two adult females involved as well. One was a tall white female by the name of Julia Fonteneaux, the other a shorter black female by the name of Tookie.

R.O. told Officer Scheffer that the two black males were driving a dark blue Ford Freestyle SUV. She said it was a rental vehicle from California. She said the males were running their prostitution operation in the area of 51st Avenue and McDowell Road, that they

had dropped her off to work the area that evening, and that the second juvenile was still with them.

R.O. said the two males had created advertisements for R.O.'s prostitution activities on Craig's List, an internet advertising service. Officer Scheffer ran a computer search and located the advertisements. When Officer Scheffer showed the advertisements to R.O., she confirmed that they were the advertisements Dre and Lee had created for her prostitution services.

On the basis of his interview with R.O., Officer Scheffer concluded that the males described by R.O. had been engaged in child prostitution. Officer Scheffer was concerned for the safety of the second female juvenile who, according to R.O., was still with the males. As a result, Officer Scheffer provided a briefing to the police squad that would be conducting surveillance activities in the area of 51st Avenue and McDowell Road. Officer Scheffer provided the squad with the information he had obtained from R.O.

At approximately 9:00 p.m. on the evening of April 29, 2006 (about 20 hours after Officer Scheffer interviewed R.O.), Officer Nicholas Nolan was conducting plain clothes surveillance in the area of 51st Avenue and McDowell. Officer Nolan saw a vehicle matching the description provided in the briefing by Officer Scheffer. It was a blue Ford Freestyle SUV with California license plates. Officer Nolan recognized the plates as "fleet" plates, which are common for rental vehicles. The Ford vehicle entered a parking lot at the corner of 51st Avenue and McDowell where Officer Nolan was located in an unmarked car. As the vehicle drove in front of Officer Nolan, he saw that it was occupied by two black males. At the time of these observations, Officer Nolan was in radio communication with other members of his squad in the area. Officer Nolan provided a running description of his observation to the other squad members.

The occupants of the Ford vehicle appeared to be watching females standing on the corner of 51st Avenue and McDowell, including a tall white female who appeared to be engaged in prostitution. The Ford vehicle drove slowly through the parking lot on the northeast corner of the intersection where Officer Nolan was located. The vehicle then

1   crossed 51st Avenue to another parking lot, where it stopped for a period of time within view
2   of the females. It again appeared to Officer Nolan that the occupants of the van were
3   watching the females. The van then left the parking lot and traveled west on McDowell Road
4   for approximately one block, then made a u-turn and began traveling east on McDowell Road
5   toward the females again.

6   Officer Nolan and others in the squad recognized this behavior as typical of pimps
7   who are supervising prostitutes. It is common for pimps to circle an area and watch the
8   prostitutes as they are working.

9   Sergeant Gallagher, who was supervising the squad that evening, ran a check on the
10  license plate of the Ford vehicle and determined that it was a rental vehicle. After the vehicle
11  had made the u-turn on McDowell Road, Sergeant Gallagher pulled it over and contacted the
12  individuals inside. The vehicle contained two black males, one of whom identified himself
13  as Uawndre, which the officers recognized as consistent with the nickname of Dre. The other
14  individual identified himself as Depaul Brooks. Both had tight fade haircuts.

15  Because it appeared to the officers that Defendants Fields and Brooks were the
16  individuals described by Officer Scheffer as having been engaged in juvenile prostitution,
17  the officers took the Defendants into custody and transported them to the Maryvale Precinct
18  for questioning. The officers also conducted a search of the Ford vehicle. Upon doing so,
19  they discovered keys and papers related to two motel rooms in the area. When the officers
20  visited the motel rooms, they gathered additional evidence concerning Defendants'
21  involvement in the crimes at issue in this case. After being questioned at the Maryvale
22  Precinct, Defendants were released. Defendant Brooks estimated that he was in custody for
23  a total of eight or ten hours.

24  **II.   Discussion.**

25  The Government contends that Defendants were subjected to an investigatory
26  detention that must be based on reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 20-21
27  (1968). The Court concludes, however, that the nature and length of Defendants' custody
28  exceeded the scope of a *Terry* stop and became an arrest that must be supported by probable

1   cause. The Ninth Circuit has held that an investigatory detention becomes a custodial arrest
2   when "the objective circumstances of the situation" would cause "a reasonable innocent
3   person" to believe that he would not be free to leave after brief questioning. *United States*
4   *v. Bravo*, 295 F.3d 1002, 1009 (9th Cir. 2002). In this case, Defendants were placed in police
5   vehicles, transported to a police station, given *Miranda* warnings, questioned, and detained
6   for several hours. Such detention constitutes an arrest. *See Florida v. Royer*, 460 U.S. 491,
7   502-03 (1983) (stop converted to arrest because officers moved detainee from concourse to
8   small room in airport); *Dunaway v. New York*, 442 U.S. 200, 216 (1979) (seizure became
9   arrest because officers moved suspect from original site to police station for interrogation);
10  *Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir. 1993) (stop converted to arrest
11  because officers handcuffed suspect and took him to police station for fingerprinting).

12          A warrantless arrest is constitutional if based on probable cause. *United States v.*
13  *Thornton*, 710 F.2d 513, 515 (9th Cir. 1983) (*citing Gerstein v. Pugh*, 420 U.S. 103, 111-14
14  (1975)); *see United States v. Bernard*, 623 F.2d 551, 558-59 (9th Cir. 1979) (stating that "an
15  arrest without a search warrant and a reasonable search incident to the arrest are valid if the
16  arrest is based on probable cause"). Probable cause is "defined in terms of facts and
17  circumstances 'sufficient to warrant a prudent man in believing that the suspect had
18  committed or was committing an offense.'" *Gerstein*, 420 U.S. at 111-12 (*quoting Beck v.*
19  *Ohio*, 379 U.S. 89, 91 (1964)); *see De Anda v. City of Long Beach*, 7 F.3d 1418, 1422 (9th
20  Cir. 1993) (stating that probable cause "depends on whether 'the facts and circumstances
21  within the officers' knowledge and of which they had reasonably trustworthy information are
22  sufficient in themselves to warrant a man of reasonable caution in the belief that an offense
23  has been or is being committed'") (*quoting Dunaway*, 442 U.S. at 208 n.8)). "All facts
24  known to the arresting officer and all reasonable inferences that could be drawn are
25  considered." *Thornton*, 710 F.2d at 515.

26          Defendants' arrest was supported by probable cause. The officers clearly had
27  reasonable grounds for believing that a crime had been committed. R.O. had been contacted
28  while engaging in prostitution solicitation. She admitted that she was 15 years old. She

- 5 -

1  informed the officers that she had been persuaded to engage in prostitution by two adult
2  males and two adult women, that she and another juvenile had been taken to California for
3  purposes of prostitution, and that she had been dropped off in the area of 51st Avenue and
4  McDowell – an area known for prostitution – by the males on the night she was contacted
5  by police. R.O. provided a detailed description of the men for whom she was working as
6  well as the vehicle they were driving. R.O.'s story was corroborated by the "missing
7  juvenile" warrant found by Officer Kartchner and by the Craig's List advertisements
8  obtained by Officer Scheffer. R.O. was then returned to her parents. This information
9  provided an ample basis for concluding that the two males described by R.O. had engaged
10 in illegal acts of child prostitution. The officers also had valid reasons to be concerned for
11 the safety of the second juvenile female described by R.O.

12  Events on the evening of April 29, 2006, provided a reasonable basis for concluding
13 that Defendants were the males described by R.O. The officers spotted a dark blue Ford
14 Freestyle SUV; the vehicle was in the area of 51st Avenue and McDowell Road, precisely
15 where R.O said the males were working and an area known for prostitution; the fleet plates
16 on the Ford vehicle and a radio check of the license plate confirmed that it was a rental car
17 from California, just as R.O had described; the vehicle contained two black males; the
18 individuals in the vehicle were engaging in conduct typical of pimps, driving slowly around
19 an area where prostitutes were working while watching the prostitutes; one of the prostitutes
20 being watched by the males was a tall white female, as R.O. had described; when the vehicle
21 was stopped, one of the occupants identified himself as Uawndre, which was consistent with
22 the nickname of "Dre" that R.O. had provided; and both of the males had tight fade haircuts
23 as described by R.O.

24  These facts, coupled with the corroborated information R.O. provided concerning the
25 males' involvement in child prostitution, provided a reasonable basis for the officers to
26 conclude that Defendants had committed a crime. As required by the Fourth Amendment,
27 the evidence possessed by the officers was sufficient to warrant a reasonably prudent man
28 in believing that Defendants were the individuals who had lured R.O into child prostitution.

1  *See United States v. Bertrand*, 926 F.2d 838, 844 (9th Cir. 1991) (holding that accurate
2  description of car and its direction of travel provided probable cause to arrest for solicitation
3  of prostitution).

4  Defendants argue that probable cause was defeated by discrepancies between R.O.'s
5  physical descriptions and the actual sizes of Defendants.  Defendant Fields testified that he
6  is 5'9" to 5'10" and 165 to 170 pounds, not  5'8" to 5'10" and 190 to 200 pounds as R.O.
7  stated.  Defendant Brooks testified that he is 5'10" and 145 pounds, not 6'0" to 6'3", 200 to
8  220 pounds as R.O. reported.  Defendant Fields further testified that he was 30 years old in
9  2006, not 18 to 25 as R.O. estimated.  Defendants also point to confusion in the police reports
10 as to which Defendant was actually driving the Ford vehicle when it was stopped, and the
11 fact that Defendant Brooks was never identified as "Lee."  Finally, both Defendants testified
12 that they provided the officers with identification on the evening of April 29, 2006, a fact the
13 officers denied.

14 The Court does not find these discrepancies sufficient to defeat probable cause.
15 Probable cause requires information sufficient to create a reasonable belief that Defendants
16 committed a crime, not information establishing that fact with absolute certainty.  The
17 substantial, corroborated evidence of child prostitution provided by R.O., together with the
18 location, vehicle, behavior, and appearances of Defendants on the night of April 29, 2006,
19 provided ample grounds for reasonable officers to conclude that Defendants were the two
20 adult males described by R.O.

21 The Court also concludes that the search of the Ford Freestyle was lawful.  If officers
22 have probable cause to believe that an automobile contains evidence of criminal activity, they
23 may search the vehicle without a warrant.  *See Thornton v. United States*, 541 U.S. 615, 622-
24 23 (2004) (officer can search vehicle's passenger compartment); *Chambers v. Maroney*, 399
25 U.S. 42, 46-47 (1970) (police had probable cause to believe car contained evidence of
26 robbery because car matched eye witnesses' descriptions); *United States v. Pinela-*
27 *Hernandez*, 262 F.3d 974, 978 (9th Cir. 2001) (police had probable cause to search vehicle
28 because previous surveillance indicated likelihood that vehicle contained contraband).  Here,

the officers plainly had probable cause to believe that the Ford contained evidence of child prostitution. The vehicle matched R.O.'s description precisely; the officers had watched as the vehicle was engaged in prostitution activities on the evening of April 29; and R.O. identified the Ford as the vehicle used to transport her from California to Arizona and that had dropped her off at 51st and McDowell.

Moreover, Courts recognize an automobile exception to the warrant requirement based on the inherent mobility of vehicles and the reduced expectation of privacy related to the use and regulation of vehicles. *See New York v. Class*, 475 U.S. 106, 112-13 (1986) (warrantless search justified by lessened expectation of privacy in automobile because of physical characteristics and pervasive regulation of moving vehicles); *Schneider v. County of San Diego*, 28 F.3d 89, 91-92 (9th Cir. 1994). If anything, Defendants' expectation of privacy was less than usual because the Ford Freestyle was rented, not owned.

What is more, the search of the vehicle in this case was justified by exigent circumstances. R.O. had identified another juvenile female who was still in the company of the two males supervising the prostitution activities. Officers were legitimately concerned for the safety of the second female, and acted reasonably in searching the vehicle promptly to obtain information that might lead them to her. *See United States v. Williams*, 626 F.2d 697, 703 (9th Cir. 1980) (search of vehicle may be justified by exigent circumstances).

**IT IS ORDERED:**

1. Defendant Fields' Motion to Suppress (Dkt. #88) is **denied**.
2. Defendant Brooks' Motion to Suppress (Dkt. #89) is **denied**.

DATED this 29th day of January, 2008.

_____
David G. Campbell
United States District Judge